UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Plaintiff,

v.

GEORGE SALMO a/k/a GEORGES
AGGEOUBI SALMO,

    Defendant,

and

YIU FAI LAI, WENDY W. LAI,
and FRANK SALMO,

    Interested Party Defendants.
_____/

Case No. 09-13482

Hon. Victoria A. Roberts

## ORDER

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Entry of Default Judgment; Yiu Fai Lai and Wendy W. Lai's Motion to Intervene as Interested Parties; and, Progressive Michigan Insurance Company's Motion to Intervene as Interested Party. The matters are fully briefed. For the reasons stated, the Court **DENIES** the Motions and *sua sponte* **DISMISSES** this case with prejudice.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

This Declaratory Judgment action arises out of an automobile accident which occurred on September 30, 2008 in Detroit, Michigan. Interested Party Defendant Yiu

1

Fai Lai and Wendy W. Lai were allegedly struck by a motor vehicle owned by Defendant George Salmo and operated by his son, Interested Party Defendant, Frank Salmo. The Lais purportedly suffered severe injuries and extensive property damage as a result of the collision with the Salmo vehicle. At the time of the accident, Yiu Fai Lai was insured with Progressive Michigan Insurance Company ("Progressive"); the policy provided for $100,000.00 in uninsured/underinsured motorist benefits.

On April 7, 2009, the Lais filed suit in the Wayne County Circuit Court, under the caption *Yiu Fai Lai and Wendy W. Lai v. Frank Salmo, Gorges Salmo, Karen Lorraine Sleep, Progressive Michigan Insurance Company and City of Detroit Police Department*, Case No. 09-008155-NI ("the underlying action"). The underlying action raises negligence claims against Frank Salmo, George Salmo, Karen Sleep and the City of Detroit Police Department. It also seeks a declaration of rights and an award of damages under the uninsured/underinsured motorist provisions of Lai's policy with Progressive.

On May 4, 2009, George Salmo reported the underlying action to his previous insurer, Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual"), seeking defense and indemnification insurance coverage for himself and Frank Salmo. Liberty Mutual issued the disputed insurance policy to George Salmo on September 20, 2008, but cancelled it effective December 30, 2008, due to non-payment of premiums. Liberty Mutual agreed to provide defense coverage under the policy, but reserved its right to deny coverage pending further investigation.

On September 3, 2009, Liberty Mutual filed this action to: (1) obtain a determination of its obligations to George and/or Frank Salmo under the Liberty Mutual

2

automobile policy issued to George Salmo; and (2) rescind the policy for failure to disclose material information in the application for insurance.  Specifically, Liberty Mutual alleges that George Salmo failed to disclose that Frank Salmo was an operator of the vehicle.  It says Frank Salmo's driving record would have precluded him from coverage under the policy.

On September 11, 2009, George Salmo was personally served with the Summons and Complaint.  The Interested Party Defendants were not served.  Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), George Salmo had to file an Answer within 20 days after service; he failed to timely file an Answer or otherwise defend this action.  On October 8, 2009, Liberty Mutual filed a Request for Clerk's Entry of Default.  The following day, the Clerk entered a Default against George Salmo, pursuant to Fed. R. Civ. P. 55(a).

On November 10, 2009, Yiu Fai Lai and Wendy W. Lai filed a Motion to Intervene as Interested Parties.  They want to intervene because Liberty Mutual's claim against George Salmo impacts their entitlement to benefits under the policy.  They also seek to file a complaint for declaratory judgment against Liberty Mutual.

On November 13, 2009, Liberty Mutual filed a Motion for Entry of Default Judgment.  Liberty Mutual says that entry of default judgment is proper because: (1) George Salmo failed to plead or defend, (2) that failure was evidenced by an affidavit, and (3) the clerk entered default against him.

On November 23, 2009, Progressive filed a Motion to Intervene as Interested Party.  Progressive wants to intervene because this Court's decision on Liberty Mutual's claim will have a direct impact on Yiu Fai Lai's uninsured/underinsured motorist claim

3

with Progressive in the underlying action.

## III.     CASE LAW AND ANALYSIS

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent basis for jurisdiction. Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists. *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). In this case, the jurisdiction of the district court to hear Liberty Mutual's declaratory judgment action arises out of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

However, while the Declaratory Judgment Act provides the district court with jurisdiction over such actions, the court is "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942).

In the Sixth Circuit, courts generally consider five factors in deciding whether a case is appropriate for declaratory judgment:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Aetna Casualty & Surety Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996).

4

When analyzing the fourth factor, courts consider three sub-factors:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

Applying these factors to this case persuades the Court that it should decline to exercise jurisdiction under the Declaratory Judgment Act.

**A. Factor #1 - Settlement of the Controversy**

Two lines of precedent have developed concerning this factor in the context of an insurance company's suit to determine its policy liability. One set of cases concludes that a declaratory relief action can settle a coverage controversy not addressed in state court, even though it will not help resolve that state court action. See *West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006) (unpublished); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986).

Another group of cases concludes that, while declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. See *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006) (unpublished);

5

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court, versus permitting a party to determine its legal obligations as quickly as possible.

This case does not involve an independent dispute; rather, it arises from and affects a pending state lawsuit. The scope of the insurance coverage under the Liberty Mutual policy is incidentally before the state court, because the state court necessarily will have to decide whether the Salmos are uninsured or underinsured before determining if the Lais are entitled to collect under the uninsured/underinsured motorist provisions of the Progressive policy.

A grant of declaratory relief would settle the scope of insurance coverage under the Liberty Mutual policy and clarify Liberty Mutual's obligation to defend and indemnify the Salmos in the underlying action, but would not clarify the legal relationship between the other parties in the underlying action. This factor weighs in favor of this Court's exercise of jurisdiction.

### B. Factor #2 - Clarification of the Legal Relations at Issue

This factor is closely related to the first factor. It usually is the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue. See *Bituminous*, 373 F.3d at 814; *Northland*, 327 F.3d at 454. There is also a split concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal

relations in the underlying state action. Compare *Prewitt*, 208 F. App'x at 397, *Northland*, 327 F.3d at 454, *Green,* 825 F.2d at 1066, and *Odom*, 799 F.2d at 250 n.1, with *Travelers*, 495 F.3d at 272, *Abex*, 161 F. App'x at 565, and *Bituminous*, 373 F.3d at 814.

More recently, the Sixth Circuit stated that "[w]hile the parties may have other tortious or contractual relationships to clarify in state court, [the] concern in considering the second Grand Trunk factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008).

Liberty Mutual seeks an order that George Salmo was not its insured, and thus it has no duty to defend the Salmos or pay any state court judgment the Lais might obtain against the Salmos. If this Court entered such an order, the state court will still need to determine whether: (1) the Salmos are liable to the Lais, (2) if liable, the degree of comparative negligence, (3) the Salmos have alternative coverage, (4) the Salmos are uninsured or underinsured, and (5) Progressive is obligated to pay the Lais under the uninsured/underinsured motorist provisions of the Progressive policy. As discussed in Section D, this Court's determination of the legal relationships between George Salmo and Liberty Mutual might confuse the state court's analysis of those liability issues. This factor weighs against this Court's exercise of jurisdiction.

### C. Factor #3 - Race for Res Judicata

This factor considers whether use of the declaratory judgment action is motivated by "procedural fencing" or likely to create a race for *res judicata*. The Lais argue that

7

Liberty Mutual is forum shopping by pursuing this litigation in federal court, since it continues to defend the Salmos in the underlying action and could have had the issue heard in state court. The Lais also say this Court lacks subject matter jurisdiction because Liberty Mutual has not established that the amount in controversy exceeds $75,000 or that there is complete diversity between the parties.

In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977).

Here, the object of the litigation is the defense of the Lai lawsuit brought against the Salmos and any resulting judgment entered against the Salmos. It is unknown how much Liberty Mutual has incurred in legal fees and expenses by defending the Lai action. However, in their Amended complaint in the underlying action, the Lais allege that Yui Lai suffered serious personal injuries, including serious injuries to his eyes, jaw, face, neck, ribs, arm, elbow, ankle and other parts of his body, pain and suffering, and emotional damages. Mr. Lai seeks wages and replacement services beyond the statutory monthly and annual maximums, and beyond three years.

In determining the amount in controversy, the court may "make an independent evaluation of the monetary value of the claim." *Rollwitz v. Burlington Northern Railroad*, 507 F. Supp. 582, 585 (D. Mont. 1981). The Court is satisfied that the amount in controversy exceeds $75,000.

Moreover, when the plaintiff files his claim after the state court litigation has begun, the courts generally give the plaintiff the benefit of the doubt that no improper

motive fueled the filing of the action. *Bituminous*, 373 F.3d at 814. Liberty Mutual filed this action five months after the underlying action was filed, and there is no evidence of any improper motive. The Court presumes that no improper motive prompted the filing. This factor weighs in favor of this Court's exercise of jurisdiction.

### D. Factor #4 - Increased Friction Between Federal and State Courts

The Supreme Court cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495). However,"the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Green*, 825 F.2d at 1067. The Court must consider the *Scottsdale Ins. Co.* sub-factors.

Here, there is a close nexus between the underlying factual and legal issues and state law and/or public policy. While generally, under Michigan law a material misrepresentation made in an application for no-fault insurance entitles the insurer to void or to cancel retroactively the policy, this right to rescind a policy altogether ceases to exist once there is a claim involving an innocent third party. *Farmers Ins. Exch. v. Anderson,* 206 Mich. App. 214 (1994) (citing *Katinsky v. Auto Club Ins Ass'n*, 201 Mich App 167, 170; 505 N.W.2d 895 (1993). Insurers can not use fraud as a basis to deny statutorily mandated minimum coverage to innocent third parties. *Id*.; see also MCL § 257.520(f)(1). Thus, entry of a default judgment in this case would frustrate Michigan's public policy protecting innocent injured third parties. Furthermore, there is no suggestion that the state court is not in a position to evaluate its own law in a fair and

impartial manner.  This factor weighs heavily against this Court's exercise of jurisdiction.

### E. Factor #5 - Availability of an Alternative Remedy

A district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326.  One of the alternative remedies available to the federal declaratory plaintiff is to seek a declaratory judgment in state court.  Another possible remedy is for the federal declaratory plaintiff to file an indemnity action at the conclusion of the state action.

Again, precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction. Compare *Northland*, 327 F.3d at 448 and *Green*, 825 F.2d at 1067, with *Travelers*, 495 F.3d at 273 and *Bituminous*, 373 F.3d at 815.

Thus, "rather than applying a general rule, [the court's] inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Scottsdale*, 513 F.3d at 562.

In this case, Liberty Mutual could have filed a declaratory action in the Michigan state court.  In many ways, this alternative would have been preferable.  As the Sixth Circuit stated:

> declaratory judgment actions seeking an advance opinion on indemnity issues are rarely helpful when there is an ongoing action in another court.  Except in unusual circumstances, such actions for an advance determination in the nature of an advisory opinion should be filed, if at all, in the court having jurisdiction over the underlying litigation.  Such actions seldom resolve the entire dispute among the parties, and they create confusion among courts as to schedules, orderly resolution of factual disputes, and *res judicata*.  Such actions require two courts rather than one to address the same basic issues and tend to increase the legal fees of the parties and the time it takes to resolve the underlying dispute.

*State Farm Fire & Casualty Co. v. Odom*, 799 F.2d 247 (6th Cir. 1986).

As indicated above, the state court necessarily will have to make determinations regarding insurance coverages, comparative negligence, and recovery based on degree of fault. In light of the other available options, the Court considers this final factor to counsel against exercising jurisdiction in this case.

### F. Balancing the Factors

Factors one and three point toward exercising jurisdiction, while the second, fourth and fifth factors counsel against exercising jurisdiction. The sole basis for federal jurisdiction is diversity jurisdiction and this matter presents only state law issues. In light of the "unique and substantial" discretion which the Declaratory Judgment Act confers on district courts, *Wilton*, 515 U.S. at 286, the Court declines to exercise jurisdiction.

## V. CONCLUSION

The Court **DENIES** the Motions and *sua sponte* **DISMISSES** this case with prejudice.

**IT IS ORDERED**.

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: July 12, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 12, 2010.

s/Linda Vertriest
Deputy Clerk

---